■ CATHY LEMPERT, Respondent, v STEINBERG & POKOIK MANAGEMENT CORP. et al., Appellants. [820 NYS2d 215]—

Order, Supreme Court, New York County (Louis B. York, J.), entered June 2, 2005, which denied defendants' motion for summary judgment dismissing the complaint, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

Plaintiff alleges that, at about 2:00 P.M. on Monday, March 17, 2003, she slipped on some gritty, granular particles on the floor of the lobby of the building where she worked, which building was owned and managed by defendants. Defendants' moving papers established a prima facie case for their entitlement to judgment. Specifically, defendants demonstrated that, after the completion of discovery, there was no evidence that defendants had either actual or constructive notice of the granular accumulation on the floor prior to the accident, nor was there any evidence that defendants had created the condition. With regard to notice, none of the deposed witnesses (plaintiff, three of her coworkers, the building concierge, and the building engineer) had noticed the accumulation in question before the accident, nor had any of such witnesses complained about it or received a complaint about it.

In opposition, plaintiff essentially conceded that there was no evidence that defendants had had actual or constructive notice of the condition. Plaintiff argued, however, that there was evidence that defendants had created the condition. Such evidence was said to consist of plaintiff's affidavit stating as follows: (1) during the weekend of March 15-16, 2003, she had been in the building, and had seen mats on the floor of the lobby; (2) when she returned to the building on Monday, March 17, the day of the accident, the mats had been removed; (3) it is plaintiff's "understand[ing]" that when defendants remove the mats from the lobby, the mats are turned over and rolled up, "so that all of the dirt, dust and debris that collects in the grooves of the mats falls onto the floor"; (4) plaintiff "further understand[s] that the cleaning of the floor after the mats are rolled up . . . does not occur until the evening when a cleaning crew comes in." Based on the foregoing, plaintiff concluded: "Accordingly, it is my belief and understanding that based upon the defendants' normal course of conduct, they placed the mats on the lobby floor before the weekend and those mats remained on the floor throughout the weekend. At some time before I fell, the mats were rolled up and in the usual manner during which the debris on the mats was dumped on the floor where it was present when I entered the building. That debris remained in the area in and about the elevator banks, causing me to fall and shatter my wrist."

Plaintiff's theory is nothing more than speculation and, therefore, does not raise a triable issue of fact sufficient to defeat defendants' well-supported motion for summary judgment. Even assuming the competency and accuracy of plaintiff's allegations concerning the timing of the placement and removal of the mats,* a verdict in favor of plaintiff would require the factfinder to speculate that the mats that covered the floor during the weekend were covered with a grainy substance; that the grainy substance fell onto the floor while the mats were being taken up; that the staff failed to clean up the grainy substance; and that the substance on which plaintiff slipped originated from the mats rather than from some other source, such as being tracked in from the street. The record does not contain an iota of admissible evidence to support any of these links in plaintiff's theory of the causation of her accident. Since a verdict "must be based on more than mere speculation or guesswork" (*Bernstein v City of New York*, 69 NY2d 1020, 1021 [1987]),

---

* We note that the building engineer testified, contrary to plaintiff's theory, that, when mats are put out during the weekend, they are left on the floor until the following Monday evening.

defendants are entitled to summary judgment (*see Siciliano v Garden of Eden, Inc.*, 12 AD3d 319, 319 [2004] [affirming summary judgment for defendant where plaintiff's case was based on "pure speculation"]).

Given that defendants have not raised an issue as to the competence of plaintiff's account of the building's operations, we have no quarrel with the dissent's statement that "[d]efendants' assertions as to the schedule for putting away the floor mats, or for cleaning the floor after the mats are rolled up, do not establish those assertions as incontrovertible." Even so, and even if we overlook the reliance of plaintiff's theory of liability on a long train of unsupported speculation, the fact remains that plaintiff does not point to any evidence contradicting the building concierge's testimony that (1) there were no mats on the lobby floor when he arrived for work at 8:00 A.M. on the day of the accident, and (2) a "general sweeping of the lobby" is performed at 10:20 A.M. each day. This uncontroverted testimony is sufficient, by itself, to negate plaintiff's theory of liability as a matter of law. Neither plaintiff nor the dissent explains the basis for imposing liability on defendants in the face of the uncontroverted evidence that, before plaintiff's accident, the mats had been removed and the floor swept. Concur—Friedman, Sullivan and Sweeny, JJ.

Mazzarelli, J.P., and Saxe, J., dissent in a memorandum by Saxe, J., as follows: I would affirm the denial of defendants' motion for summary judgment. A question of fact is presented as to whether defendants created the alleged dangerous condition. The evidence on this critical issue may be circumstantial, but it is enough to permit the inference that the actions or inaction of defendants' employees created the condition.

Plaintiff testified at her deposition that on March 17, 2003, she entered the building from Madison Avenue at about 2:00 P.M. for the first time that day and walked to the bank of elevators. As she approached the elevator bank, she slipped on a sandy, gritty substance. A coworker who came to her aid after she fell also indicated that the floor was covered with a sandy substance. Another coworker testified that in general, "up to this day those floors can be gritty and grainy."

Plaintiff further explained in an affidavit submitted in opposition to defendants' motion that, in her job as a real estate salesperson, she was in the building during the weekend of March 15-16, 2003, at which time she observed mats on the floor in the lobby. When she entered the building on March 17, the day of the accident, the mats had been removed from the lobby floor.

Based on the explanation of defendants' employee that in order to remove the mats, they are turned over and rolled back onto racks, it may be inferred that any dirt, dust, or grainy debris contained within the fibers of the mats would fall onto the floor during the process of the mats' removal. We have no direct evidence of exactly when the mats were last removed prior to plaintiff's accident, or of whether or how the floor was thereafter cleaned. However, from the evidence submitted it is possible to logically conclude that some time before plaintiff fell, defendants had rolled up the mats that had been on the lobby floor over the weekend, but had not properly cleaned up the floor thereafter. Such a finding would be neither guesswork nor speculation, but a reasonably drawn logical inference.

Defendants' assertions as to the schedule for putting away the floor mats, or for cleaning the floor after the mats are rolled up, do not establish those assertions as incontrovertible facts or otherwise disprove plaintiff's theory of liability. They merely contribute to the questions of fact that ought to be left for trial.